**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SANDRA CLOWNEY** : | |
| : | **CIVIL ACTION NO. 3:17-0223** |
| **Plaintiff** : | |
| : | **(JUDGE MANNION)** |
| **v.** : | |
| : | |
| **URS/AECOM, URS FEDERAL** : | |
| **SERVICES and INTERNATIONAL** : | |
| **ASSOCIATION OF MACHINISTS** : | |
| **AND AEROSPACE WORKERS** : | |
| : | |
| **Defendants** : | |
| : | |

= = = = = = = = = = = = = = = = = = = = = = = = = =

| | |
|---|---|
| : | |
| **SANDRA CLOWNEY** : | |
| : | |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | |
| **URS/AECOM, URS FEDERAL** : | |
| **SERVICES and INTERNATIONAL** : | |
| **ASSOCIATION OF MACHINISTS** : | |
| **AND AEROSPACE WORKERS,** : | |
| **DISTRICT 1 AND LOCAL 1717** : | |
| : | |
| **Defendants** : | |

## <u>MEMORANDUM</u>

Presently before the court are three pending motions from two separate cases that the court has consolidated for all purposes, No. 3:17-cv-0223 and No. 3:17-cv-1761. (No. 3:17-cv-0223, Doc. 35). The pending motions include

(1) a motion filed by defendant International Association of Machinists and Aerospace Workers ("IAM") to vacate the entry of default against it and to partially dismiss the plaintiff's second amended complaint, (No. 3:17-cv-0223, Doc. 28); (2) a motion filed by defendant URS/AECOM, URS Federal Services ("URS") to dismiss the plaintiff's second amended complaint, (No. 3:17-cv-0223, Doc. 15); and (3) a separate motion to dismiss filed by URS, (No. 3:17-cv-1761, Doc. 11). The court has considered the arguments from each pending motion herein. Based upon the court's review of these motions and their related materials, the defendants' motions will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    PROCEDURAL BACKGROUND

On February 6, 2017, the plaintiff, Sandra Clowney, filed her original complaint against her employer, URS, and her labor union, IAM, alleging discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). (No. 3:17-cv-0233, Doc. 1). URS filed a motion to dismiss this original complaint on April 7, 2017, but IAM never filed any responsive pleading or motion. (No. 3:17-cv-0233, Doc. 4). In light of URS's motion to dismiss,

Clowney filed an amended complaint on April 28, 2017. (No. 3:17-cv-0233, Doc. 8). URS then filed a motion to dismiss the amended complaint on May 12, 2017, but IAM still did not file any responsive pleading or motion to the amended complaint. (No. 3:17-cv-0233, Doc. 10). Clowney thereafter filed a second amended complaint on June 1, 2017. (No. 3:17-cv-0233, Doc. 12). Yet again, URS filed a motion to dismiss the second amended complaint on June 7, 2017, which remains pending and is addressed herein, while IAM rendered no responsive filing. (No. 3:17-cv-0233, Doc. 15).

Believing that IAM intended not to defend against these claims on their merits, Clowney requested an entry of default against IAM under Federal Rule of Civil Procedure 55(a). (No. 3:17-cv-0233, Doc. 24). Since it appeared that the summons and complaint had been duly served upon IAM and that IAM had failed to respond to the claims against it, the Clerk of Court ("Clerk") subsequently entered default against IAM on September 5, 2017. (No. 3:17-cv-0233, Doc. 25).

On September 21, 2017, IAM filed its motion to vacate the Clerk's entry of default and to dismiss counts III, IV, and V of Clowney's second amended complaint. (No. 3:17-cv-0233, Doc. 28). This motion asserts, among other allegations, that none of Clowney's three complaints, including the second amended complaint, were properly served upon IAM. (*Id.*). Specifically, IAM

argues that the three complaints were instead served upon "District and Local Lodges" of IAM, which IAM claims exist as separate and distinct legal entities despite being technically affiliated with IAM. (No. 3:17-cv-0233, Doc. 31). In arguing for vacation of the Clerk's entry of default, IAM contends that District and Local Lodges govern themselves, transact business on their own behalf through their own elected officers, and are authorized to neither accept service of a complaint directed towards IAM nor otherwise act in IAM's name. (*Id.*). IAM further asserts that Clowney's claims against it, contained in counts III, IV, and V of the second amended complaint, should be dismissed. (*Id.*).

On September 28, 2017, Clowney initiated a separate action under §301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185, stemming from the terms of a written collective bargaining agreement. (No. 3:17-cv-1761, Doc. 1). This time, Clowney named as defendants both URS and two regional offices of IAM, District Lodge 1 and Local Lodge 1717. (*Id.*). On November 16, 2017, URS moved to dismiss this claim. (No. 3:17-cv-1761, Doc. 11). On January 3, 2018, following a case management conference with counsel, the two cases described above were consolidated for all purposes. (No. 3:17-cv-0233, Doc. 35). The three pending motions in the consolidated cases have been fully briefed and are now ripe for disposition.

## II. DISCUSSION

### A. IAM's Motion to Vacate the Clerk's Entry of Default Against It

IAM first moves for the court to vacate the Clerk's entry of default against it. (No. 3:17-cv-0233, Doc. 28). Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." The Third Circuit further "require[s] the district court to consider the following factors in exercising its discretion in granting or denying a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b): (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982)).

Before undertaking an analysis of these factors, it is worth noting that the "court does not favor defaults and that, in a close case, doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)). Moreover, "[t]here is a distinction between a default standing alone and a

default judgment." *Feliciano*, 691 F.2d at 656. "Any of the reasons sufficient to justify the vacation of a default judgment under Rule 60(b) normally will justify relief from a default entry, and in various situations, a default entry may be set aside for reasons that would not be enough to open a default judgment." *Id.* Thus, "[l]ess substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Id.*

The first factor for consideration centers on whether vacating the entry of default would result in prejudice to the plaintiff. Specifically, Clowney must show that her "ability to pursue the claim has been hindered since the entry of the default judgment by loss of evidence or otherwise." *Gross*, 700 F.2d at 123 (3d Cir. 1983) (citing *Feliciano*, 691 F.2d at 657). Clowney has not alleged, nor does the record indicate, that there are any overriding concerns of this nature such that special harm or prejudice would result to her if the entry of default were vacated. (No. 3:17-cv-0233, Doc. 32). While Clowney may be subjected to some additional delays in realizing the satisfaction of her claim, nothing in this case indicates that her overall ability to pursue her claims would suffer. This factor, therefore, weighs in favor of setting aside the entry of default against IAM.

The second factor for consideration focuses on whether IAM has established a meritorious defense for trial. In other words, there would be no

reason to set aside the entry of default if IAM could not demonstrate some possibility of success on the merits. The showing of a meritorious defense is accomplished when the "allegations of [the] defendant . . . if established [at] trial, would constitute a complete defense to the action." *Tozer v. Charles A. Krause Mill. Co.*, 189 F.2d 242, 244 (3d Cir. 1951). To understand whether IAM could establish such a defense, the court must undertake a brief inquiry into the case's underlying merits.

Here, Clowney brings claims of discrimination in violation of Title VII and the ADEA. (No. 3:17-cv-0233, Doc. 12). IAM, in turn, asserts that Clowney's second amended complaint fails to comply with necessary statutory and regulatory prerequisites for filing such claims and further fails to state a claim against IAM. (No. 3:17-cv-0233, Doc. 31). IAM first argues that certain procedural defects, including Clowney's alleged failure to verify her charge of discrimination in writing under oath and her alleged failure to file her discrimination claims within ninety days of receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"), constitute grounds for dismissal of Clowney's action. (No. 3:17-cv-0233, Doc. 33). Indeed, Title VII and the ADEA each encompass certain procedural requirements that must be satisfied prior to maintaining a lawsuit. Title VII, for instance, requires a charge of discrimination to be "verified" and "in writing and

signed." 29 C.F.R. §1601.9. *See also* 42 U.S.C. §2000e-5(b) (stating that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires"). The ADEA requires an action to be commenced within ninety days of receiving the EEOC's approval to move forward. *See* 29 U.S.C. §626(e). Thus, if IAM's contentions were properly established as true and correct at trial, they would provide a complete defense to the action, and at least some of Clowney's claims would fail as a matter of law. (No. 3:17-cv-0233, Doc. 12; Doc. 31).

IAM further contends that Clowney's allegations against it from the second amended complaint are factually insufficient to state a valid claim for relief. (No. 3:17-cv-0233, Doc. 31). If the veracity of this argument were to be established at trial, it too would afford IAM a complete defense to the claims against it. While this implies nothing about IAM's actual likelihood of prevailing at trial, IAM's asserted defenses are nonetheless potentially meritorious. Accordingly, this second factor also weighs in favor of setting aside the entry of default against IAM.

The final factor for consideration asks whether the entry of default resulted from IAM's culpable conduct. For these purposes, culpable conduct means "dilatory behavior that is willful or in bad faith." *Dizzley v. Friends Rehab. Program, Inc.*, 202 F.R.D. 146, 148 (E.D. Pa. 2001) (citing *Gross*, 700

F.2d at 124). As noted previously, any grounds that would be sufficient to justify vacating a default judgment under Rule 60(b) are more than sufficient to satisfy the "good cause" standard for vacating an entry of default under Rule 55(c). *See Feliciano*, 691 F.2d at 656. Included among those permissible grounds are "mistake, inadvertence, surprise, or excusable neglect" as well as "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

The grounds of "mistake, inadvertence, surprise, [and] excusable neglect" accurately summarize what occurred in the present case. *Id.* IAM is an exceptionally large and diverse labor union, existing in collaboration with numerous "District and Local Lodge" affiliates across the nation. (No. 3:17-cv-0233, Doc. 31). Each District and Local Lodge governs itself and is organized under a separate charter and set of bylaws. (No. 3:17-cv-0233, Doc. 31-3). Rather than serving process upon IAM at its national headquarters, Clowney instead unintentionally directed service toward one or more regional affiliates due to mistakenly erroneous computer searches for the proper address. (No. 3:17-cv-0233, Doc. 32). While Clowney attempts to suggest that IAM engaged in foul play due to the fact that certain internet webpages listing the addresses of IAM's regional affiliates were altered soon after IAM filed the instant motion to vacate, this argument is without merit. (*Id.*). Without more, the mere temporal proximity between IAM's filing of its

motion to vacate and the rearrangement of particular internet webpages does not permit a reasonable inference of "dilatory behavior that is willful or in bad faith." *Dizzley*, 202 F.R.D. at 148 (citing *Gross*, 700 F.2d at 124). The record here presents no other evidence indicating IAM's direct culpability in bringing about the Clerk's entry of default.

"A motion to set aside a default . . . is addressed to the sound discretion of the court." *Tozer*, 189 F.2d at 244 (citing *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 130 F.2d 185, 187 (3d Cir. 1942)). Ultimately, the fact remains that IAM was never actually put on notice of Clowney's claims until the default was entered. This fact was not caused by any illicit action or inaction from IAM. To the contrary, this was caused by a clerical error and a procedural disconnect, stemming mainly from Clowney's inability to ascertain the proper address for effectuating service of process upon a large, decentralized labor union. Now that this error has been brought to the full attention of the court and the parties themselves, the most appropriate course of action is to vacate the entry of default and permit this case to move forward. *See, e.g.*, *Gross*, 700 F.2d at 122; *Farnese*, 687 F.2d at 764. The facts of this case therefore satisfy the "good cause" standard required to set aside an entry of default, as no prejudice accrued to Clowney, a potentially meritorious defense is available to IAM, and IAM's conduct in failing to timely answer was

not willful or in bad faith. Fed. R. Civ. P. 55(c). Consequently, the court will vacate the entry of default against IAM.

### B. IAM's Motion to Dismiss the Claims Against It

Upon vacation of the entry of default against IAM, IAM next urges the court to address this case's underlying merits by moving for dismissal of counts III, IV, and V of Clowney's second amended complaint, each of which asserts claims against IAM alone, as opposed to its codefendant URS. (No. 17-cv-0233, Doc. 12; Doc. 28). The court will address IAM's arguments in favor of dismissal in turn.

### i. Clowney's Alleged Failure to Serve the Complaint Upon IAM Within 90 Days Under Rule 4(m)

IAM first alleges that the court must dismiss the claims against it under Rule 4(m) because it was not served "within 90 days after the complaint [was] filed." Fed. R. Civ. P. 4(m). Rule 4(m), however, further provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.* "If good cause is present, the district court must extend time for service, and the inquiry is ended." *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

The good cause applicable here originates from the very same good cause that provided the basis for vacating the entry of default against IAM. Specifically, Clowney believed that IAM had been promptly and properly served, even though it was not, because IAM maintains close ties with a vast network of District and Local Lodges bearing names and functions similar to those of IAM itself. (No. 3:17-cv-0233, Doc. 31). Clowney's complaints were served upon these regional affiliates when they should have been directed toward IAM's national headquarters. In other words, mere inadvertence and excusable neglect were the primary culprits responsible for IAM being served after the time limitation specified in Rule 4(m). (No. 3:17-cv-0233, Doc. 32).

If these errors in clerical processing constituted sufficient cause to vacate the entry of default against IAM, they also rise to the level of good cause that is sufficient for extending the time during which Clowney may serve her complaint. *See* Fed. R. Civ. P. 4(m). As such, dismissal of counts III, IV, and V of Clowney's second amended complaint is not warranted on this basis.

### ii. **Clowney's Alleged Failure to Perfect Her EEOC Charge Before Filing Her Title VII and ADEA Claims**

IAM's next argument is that Clowney's Title VII and ADEA claims against it should be dismissed because she failed to "perfect" her EEOC

charge of discrimination by "verifying" its allegations in writing and under oath. (No. 3:17-cv-0223, Doc. 31). This argument stems from the regulations pertaining to Title VII, which state that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. §1601.9. The Third Circuit has addressed this requirement directly, holding that while Title VII does "require a plaintiff to verify her charge before [a defendant] receives notice of, or is required to respond to, the charge . . . we conclude that the verification requirement is not jurisdictional, and where . . . the [defendant] responds to the merits of the charge without raising the plaintiff's failure to verify her charge before the EEOC, it has waived its right to assert that defense in later federal court proceedings." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 258 (3d Cir. 2006).

Here, Clowney does not even attempt to argue that her EEOC charge was verified and perfected. (No. 3:17-cv-0223, Doc. 32). Thus, the determination of whether her Title VII claims can be dismissed on this basis hinges upon whether IAM waived this defense by responding to the underlying merits of Clowney's charge without raising the issue of her failure to verify and perfect it. As noted above, while URS filed a new motion to dismiss after each iteration of Clowney's complaint, directly responding to the merits of Clowney's discrimination claims and thus waiving its ability to assert this

defense, IAM's first response to this case's merits came through the instant motion to vacate the Clerk's entry of default and to dismiss counts III, IV, and V of the second amended complaint. (No. 3:17-cv-0223, Doc. 4; Doc. 10; Doc. 15; Doc. 28). Since IAM's first response to the merits of Clowney's allegations asserted the failure to verify and perfect argument, IAM has established a viable defense to Clowney's Title VII claims. (No. 3:17-cv-0223, Doc. 28). As such, counts III and IV in Clowney's second amended complaint will be dismissed because she failed to comply with this established procedural prerequisite. *See Buck*, 452 F.3d at 258.

On the other hand, IAM has failed to produce, nor is the court aware of, any precedent specifying that this "verification" requirement is similarly mandatory under the ADEA. In fact, each of IAM's cited cases in support of this argument deal specifically with Title VII claims and do not address the ADEA at all. *See Balazs v. Liebenthal*, 32 F.3d 151, 153 (4th Cir. 1994); *Danley v. Book-of-the-Month Club, Inc.*, 921 F. Supp. 1352, 1352 (M.D. Pa. 1996), *aff'd*, 107 F.3d 861 (3d Cir. 1997).

A closer examination of the relevant legal authority reveals that the ADEA and its applicable regulations contain no provision requiring verification of the charge. The regulation that IAM cites in support of its verification argument—namely, 29 C.F.R. §1601.9—specifically applies to Title VII, the

Americans with Disabilities Act of 1990 ("ADA"), and the Genetic Information Nondiscrimination Act of 2008 ("GINA"), but it does not apply to the ADEA. *See* 29 C.F.R. §1601.1 (noting that "[t]he regulations set forth in this part contain the procedures established by the [EEOC] for carrying out its responsibilities in the administration and enforcement of [Title VII], the [ADA], and the [GINA]"). Regulations pertaining to the ADEA, by contrast, are housed in an entirely different "part" of the Code of Federal Regulations. *See id.* §1626.1 (noting that "[t]he regulations set forth in this part contain the procedures established by the [EEOC] for carrying out its responsibilities in the administration and enforcement of the [ADEA]"). The ADEA regulation specifying the form in which a charge of discrimination must be submitted simply states that "[a] charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s)." *Id.* §1626.6. No requirement to perfect and verify the charge exists.

Indeed, the Supreme Court and the Third Circuit each have confirmed that the standard for what constitutes a charge of discrimination is likely lower under the ADEA than it is under Title VII. *See, e.g.*, *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 405 (2008) (accepting an "intake questionnaire" along with a "detailed, six-page affidavit" as sufficient evidence of an ADEA charge); *Pizio v. HTMT Glob. Sols.*, 555 F. App'x 169, 174 (3d Cir. 2014)

(accepting an "intake questionnaire" with no accompanying documentation as sufficient evidence of an ADEA charge). "[T]his [c]ourt's interpretation of the ADEA is not governed by Title VII decisions." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2345 (2009). "[T]he EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII." *Holowecki*, 552 U.S. at 393. The court "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Id.* Accordingly, the court will grant IAM's motion to dismiss as to counts III and IV of Clowney's second amended complaint, which allege discrimination in violation of Title VII, but the motion will be denied as to count V, which alleges discrimination in violation of the ADEA.

### iii. Clowney's Alleged Failure to File Her ADEA Claim Within Ninety Days of the Issuance of Her Notice of Right to Sue

IAM next contends that count V of the second amended complaint, alleging ADEA violations against both IAM and URS, should be dismissed because this claim was not filed within ninety days of Clowney's receipt of her Notice of Right to Sue, as required by 29 U.S.C. §626(e). To fully understand this argument, a more thorough explanation of the relevant filing dates in this

case is warranted. Clowney's Notice of Right to Sue is dated November 11, 2016, and Clowney filed her initial complaint on February 6, 2017, meaning that her initial complaint was clearly filed within the ninety-day statutory window. (No. 3:17-cv-0223, Doc. 1). However, while Clowney's initial complaint made multiple references to "age discrimination," it did not allege violations of the ADEA as official counts in the complaint. (*Id.*). Clowney's later amended complaint, which was filed on April 28, 2017, and her second amended complaint, which was filed on June 1, 2017, both corrected for this oversight by alleging ADEA violations as official counts. (No. 3:17-cv-0223, Doc. 8; Doc. 12). The resolution of IAM's assertion regarding the timeliness of Clowney's ADEA claim thus hinges on whether her amended complaint "relates back" to the date of her initial complaint under Rule 15(c). Fed. R. Civ. P. 15(c). If it does relate back, then Clowney's ADEA claim would be timely and IAM's argument on this point would be without merit.

Rule 15(c)(1)(B) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id.* Here, when setting forth the factual circumstances forming the basis of her claims in her original complaint, Clowney made numerous references to age discrimination.

(No. 3:17-cv-0223, Doc. 1). For example, numbered paragraph four expressly states that "Clowney brings this action pursuant to . . . the Age Discrimination in Employment Act." (*Id.*). Numbered paragraph five states that the "plaintiff contends that [the] defendants . . . discriminated . . . because of her . . . age." (*Id.*). Numbered paragraphs sixty-three, seventy-eight, eighty-one, and ninety-five each make additional references to age discrimination. (*Id.*). Thus, there is no question that Clowney was laying the factual groundwork for bringing an ADEA claim as far back as her original complaint, which was filed well within the applicable limitations period. *See* 29 U.S.C. §626(e).

Each of Clowney's later-asserted ADEA claims arose from the very same conduct and operative facts as those claims asserted in her original complaint. Specifically, Clowney alleges that, due to her "age, race, and gender," she was not allowed to exercise her contractual bumping rights and assume a lower-level position following mass layoffs by her employer or to join a class action lawsuit stemming from said layoffs. (No. 3:17-cv-0233, Doc. 12). Even though ADEA violations were not listed as official counts in Clowney's initial complaint, her later amended complaints, which do allege ADEA violations as official counts, relate back to the date of the original, permitting Clowney to assert those claims now. As such, dismissal of count V of Clowney's second amended complaint is not warranted on this basis.

### iv. Clowney's Alleged Failure to State a Claim Against IAM

IAM's final argument in favor of dismissal is brought under the provisions of Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). Specifically, IAM alleges that Clowney fails to state a valid claim against it because the proper defendants should instead be the appropriate District and Local Lodges, as opposed to IAM, which is the international union organization. (No. 3:17-cv-0233, Doc. 33). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See, e.g.*, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Dismissal under this rule is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The facts alleged in the complaint must be sufficient "to raise a right to relief above the speculative level." *Id.* at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. *Id.* at 556. Furthermore, to satisfy federal pleading requirements, the plaintiff must "provide the ground of his [or her] entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *id.* at 544). This "pleading standard . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Generally, in ruling on a motion to dismiss, the "court relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "Further, documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court cannot rely on any other portions of the record in considering a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Here, Clowney has stated a plausible claim to relief against IAM. Following the dismissal of counts III and IV of Clowney's second amended

complaint, the only remaining claim asserted against IAM is count V for violations of the ADEA. (No. 3:17-cv-0233, Doc. 12). The ADEA states, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. §623(a). The ADEA further states that "[i]t shall be unlawful for a labor organization . . . to discriminate against any individual because of his age . . . or otherwise adversely affect his status as an employee or as an applicant for employment . . . because of such individual's age." *Id.* §623(c). Similarly, Clowney's second amended complaint states, in relevant part, that IAM's "disregard for [Clowney's] employment position, seniority, and qualified classifications" were carried out due to "Clowney's age and were sufficiently severe and pervasive so as to alter the terms and conditions of her employment." (No. 3:17-cv-0233, Doc. 12).

The Supreme Court and the Third Circuit have reiterated that international union organizations may be held liable for the activities of their regional counterparts when they "instigate, support, ratify, or encourage" any of the regional union's unlawful activities. *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1288 (3d Cir. 1991) (quoting *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 218 (1979)).

The factual allegations contained in the second amended complaint note that representatives from both IAM and its District and Local Lodges did not appropriately follow up with Clowney regarding her grievances against URS. (No. 3:17-cv-0233, Doc. 12). Accepting these allegations as true, Clowney has pleaded sufficient facts to state a plausible claim for relief against IAM. (*Id.*).

IAM attempts to argue that it is an improperly named defendant in light of an allegedly weak affiliation with its District and Local Lodges. (No. 3:17-cv-0233, Doc. 32). At the very least, however, more facts are needed to address this contention. While it is true that "[t]he test to determine whether an agency relationship exists is essentially one of balancing the . . . business affairs subject to the International's control . . . against those left to the discretion of the local," at this early stage in the proceedings, the court cannot yet ascertain the extent to which IAM exerted authority over or ratified the actions of its District and Local Lodges. *Scott v. Graphic Commc'ns Int'l Union, Local 97-B*, 92 F. App'x 896, 905 (3d Cir. 2004). The answer to this question cannot be found in the litigants' competing citations to provisions of IAM's constitution. (No. 3:17-cv-0223, Doc. 31; Doc. 32). IAM's arguments, therefore, would be more properly addressed at summary judgment after more fact discovery has been completed. As such, the claims against IAM

contained in Clowney's second amended complaint cannot be dismissed on the basis of the instant Rule 12(b)(6) motion.

### C. URS's Motion to Dismiss the Claims Against It

URS has similarly moved under Rule 12(b)(6) in both consolidated cases to dismiss Clowney's claims against it. (No. 3:17-cv-0223, Doc. 15; No. 3:17-cv-1761, Doc. 11). As the Rule 12(b)(6) standard has been set forth above, the court will now undertake an analysis of the merits of URS's arguments in favor of dismissal. *See* Fed. R. Civ. P. 12(b)(6).

### i. Clowney's Alleged Failure to State a Claim Against URS

URS's main argument in favor of dismissing Clowney's Title VII and ADEA claims against it suggests that the allegations contained in Clowney's second amended complaint fail to permit an inference of discrimination. A *prima facie* case of discrimination under either statute would require Clowney to plead (1) that she belongs to a protected class; (2) that she was qualified for the position held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action gave rise to an inference of discrimination. *See, e.g.*, *Merke v. Lockheed Martin*, 645 F. App'x 120, 123-24 (3d Cir. 2016) (setting forth the *prima facie* case for a Title VII claim); *Duffy v.*

*Paper Magic Grp., Inc.*, 265 F.3d 163, 166-67 (3d Cir. 2001) (setting forth the *prima facie* case for an ADEA claim).

Here, Clowney has stated a plausible claim to relief against URS, and there is enough factual support, accepting the allegations in Clowney's second amended complaint as true, to sustain her discrimination claims past this early stage of the proceedings. URS fixates on certain facts from Clowney's second amended complaint stating that a "cable assembly test" to determine which employees could exercise their contractual bumping rights had been set up in such a way that "nearly everyone would fail the test," but this misses the core subject matter of Clowney's discrimination claims. (No. 3:17-cv-0223, Doc. 17). The second amended complaint further states that "[e]very contractor [who was] Caucasian, male, and younger than . . . Clowney, who exercised his bump[ing] rights, and [who] failed the cable assembly test then was offered a position in a lower employment classification . . . without taking any further steps." (No. 3:17-cv-0223, Doc. 12). This suggests that other employees who failed the cable assembly test were permitted to exercise their bumping rights and retain some form of employment with URS, while Clowney was not. Such assertions could certainly give rise to an inference of unlawful discrimination.

Clowney's further alleges that the "Caucasian workers, male workers, and younger workers [who] had their seniority rights restored . . . were in

similar . . . situations as . . . Clowney." (*Id.*). While URS takes issue with the fact that Clowney "does not state the names, titles, or ages of these employees who were allegedly treated more favorably," details as specific as these are not required to satisfy the federal notice pleading standard. (No. 3:17-cv-0223, Doc. 16). This "pleading standard . . . does not require detailed factual allegations, but it demands more than an unadorned . . . accusation." *Iqbal*, 556 U.S. at 678. Here, Clowney has stated enough facts "to raise [her] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In sum, the issue of whether Clowney's coworkers were "similarly situated" is a factual determination that requires additional discovery to more fully resolve and that would be more properly addressed at summary judgment. Accordingly, URS's motion to dismiss Clowney's second amended complaint for failure to state a claim will be denied.

### ii. Clowney's Alleged Failure to Comply with the Applicable Statute of Limitations for Hybrid §301 Claims

Finally, URS moves to dismiss the complaint from Clowney's later-filed case, which asserts a "hybrid action" arising under §301 of the LMRA against URS, District Lodge 1, and Local Lodge 1717. (No. 3:17-cv-1761, Doc. 1).

Since this case was subsequently consolidated into Clowney's earlier case, URS's motion to dismiss is considered herein. (No. 3:17-cv-1761, Doc. 11).

Claims under LMRA §301 are termed "hybrid" because they essentially involve two separate but interdependent claims—one against the employer for breach of a collective bargaining agreement and one against the labor union for unfair representation. *See* 29 U.S.C. §185; *Albright v. Virtue*, 273 F.3d 564, 576 (3d Cir. 2001). Here, URS's argument in favor of dismissal asserts that Clowney failed to file her hybrid §301 claim within the applicable six-month limitations period for bringing such claims. (No. 3:17-cv-1761, Doc. 11). The Supreme Court has confirmed that the six-month window specified in LMRA §10(b) is indeed the proper statute of limitations for hybrid §301 claims. *See* 29 U.S.C. §160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). This is undisputed by the parties.

Importantly, however, this six-month window is tolled until, and begins to run only when, both the claim against the employer and the claim against the labor union have accrued. *See Vadino v. A. Valey Engineers*, 903 F.2d 253, 261 (3d Cir. 1990). "Therefore, the employee's claim on the employer's alleged breach of the collective bargaining agreement is tolled until it was or should have been clear to the employee that the union would not pursue the grievance." *Id.* "The relevant statute of limitations question . . . is not only

when [Clowney] knew, or should have known, that the employer breached the contract but also when [she] knew, or should have known, that further appeals to the [u]nion would be futile." *Id. See also Scott v. Local 863, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 725 F.2d 226, 229 (3d Cir. 1984) (noting that "the [Supreme] Court has created a case-by-case factual standard turning on the issue of when it becomes clear that further internal appeals would be futile").

URS attempts to argue that the limitations period began running on January 5, 2016 when Clowney became wholly aware of her allegedly lost rights and benefits under her collective bargaining agreement. (No. 3:17-cv-1761, Doc. 13). However, for accrual purposes, the limitations period begins running when "further internal appeals would be futile." *Scott*, 725 F.2d at 229. According to the complaint, upon Clowney's realization that her employer may have violated her contractual rights, she first turned to her labor union to seek redress, and she continued to contact union representatives and inquire about the status of her grievance until she received a letter from the chairmain of Local Lodge 1717 on March 29, 2017. (No. 3:17-cv-1761, Doc. 1). This letter stated "that the union does not believe [Clowney's] case merits further appeal and that her case is now closed." (*Id.*). This letter constituted Clowney's written response to her initial written grievance, and it spelled out

quite plainly that any further appeals to the union through the grievance procedure outlined in the collective bargaining agreement would be futile. "[T]he statute of limitations may be tolled against the employer in a hybrid case . . . even when the reason for tolling the statute of limitations is due to the action of the union alone." *Albright*, 273 F.3d at 576-77. As such, since Clowney was not informed that continuing to appeal to the union's grievance procedure would be in vain until March 29, 2017, that is the date when Clowney's hybrid §301 claim accrued and the date when the six-moth limitations period began to run. (No. 3:17-cv-1761, Doc. 1). Clowney thereafter filed her complaint on September 28, 2017, which falls within the six-month statute of limitations. (*Id.*).

Here, Clowney attempted to exhaust her contractual remedies available to her under the collective bargaining agreement, a course of action which courts only sometimes mandate as a prerequisite to filing a hybid §301 claim. (*Id.*). As the Supreme Court has explained, "courts have discretion to decide whether to require exhaustion of internal union procedures" before the plaintiff may file suit under §301. *Clayton v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 451 U.S. 679, 689 (1981). URS tries to argue that because the requirement for Clowney to attempt exhaustion of her contractual remedies is "not . . . mandatory" and "judicially imposed," it

somehow moves the date when the limitations period began running back to January 5, 2016. (No. 3:17-cv-1761, Doc. 18). The fact that it is discretionary with the court whether to require the plaintiff to exhaust her contractual remedies before filing a hybrid §301 claim, however, is wholly irrelevant to the question of when the statute of limitations began to run in this case. (No. 3:17-cv-1761, Doc. 18). While it is true that the very reason why some courts have declined to require plaintiffs to exhaust their contractual remedies is to better determine when "further internal appeals would be futile," none of the factors that otherwise would warrant waiving the exhaustion requirement are present in this case. *Scott*, 725 F.2d at 229. It makes good sense why courts would not demand exhaustion in cases where, for example, "union officials are so hostile to the employee that [she] could not hope to obtain a fair hearing on [her] claim . . . [or where] the internal union appeals procedures would be inadequate . . . to award [the employee] the full relief [she] seeks under §301." *Local Union No. 1075, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 716 F.2d 182, 186 (3d Cir. 1983). Clowney, however, had no reason to doubt that she would obtain a fair hearing or to believe that the internal union procedures would be inadequate to address her grievance until the union itself confirmed these fears to her in writing on March 29, 2017. (No.

3:17-cv-1761, Doc. 1). There is no reason for the court here to waive the exhaustion requirement, as the waiver of said requirement is not at issue in situations where the plaintiff exhausted her contractual remedies anyway.

In sum, accepting the allegations on the face of the complaint as true, Clowney filed her hybrid §301 within the statute of limitations. (*Id.*). "[T]he employee may seek judicial enforcement of [her] contractual rights . . . if, as is true here, the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if, as is alleged here, the employee-plaintiff has been prevented from exhausting [her] contractual remedies by the union's wrongful refusal to process the grievance." *Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Accordingly, the court will deny URS's motion to dismiss.

## III. CONCLUSION

In light of the foregoing, the defendants' pending motions from the consolidated cases will be **GRANTED IN PART** and **DENIED IN PART**. Specifically, IAM's motion to vacate the Clerk's entry of default and to dismiss counts III, IV, and V of Clowney's second amended complaint will be **GRANTED** with respect to IAM's request to vacate the Clerk's entry of default

and with respect to IAM's request to dismiss counts III and IV of Clowney's second amended complaint. (No. 3:17-cv-0233, Doc. 28). The motion will be **DENIED** with respect to IAM's request to dismiss count V of Clowney's second amended complaint. (*Id.*). URS's motion to dismiss Clowney's second amended complaint will be **DENIED**. (No. 3:17-cv-0233, Doc. 15). URS's second motion to dismiss Clowney's complaint will be **DENIED**. (No. 3:17-cv-1761, Doc. 11). An appropriate order shall issue.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States District Judge**

**Date: January 19, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0223-01.docx