## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SANDRA CLOWNEY** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:17-223** |
| **v.** | : | **(JUDGE MANNION)** |
| **URS/AECOM, URS FEDERAL SERVICES, and I.A.M. INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, DISTRICT 1 and LOCAL 1717.** | : : : : | |
| | : | |
| **Defendants** | | |

## MEMORANDUM

Presently before the court is defendant URS/AECOM, URS Federal Services's ("URS") motion for summary judgment (Doc. 50), defendant International Association of Machinists & Aerospace Workers'[1] ("International") motion for summary judgment (Doc. 52), and defendants District Lodge 1 ("District") and Local 1717's ("Local") joint motion for summary judgment, (Doc. 51)—(collectively, "defendants"). For the reasons set forth below, defendants' motions for summary judgment (Doc. 50; Doc. 52; Doc. 51) will be **GRANTED**.

---

[1] *See* Doc. 55, at 1 n.1 (indicating the organization's proper name is "International Association of Machinists & Aerospace Workers").

## I.    PROCEDURAL HISTORY

On February 6, 2017, the plaintiff Sandra Clowney ("Clowney") filed her original complaint against her employer, URS, and her labor union, International, alleging discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§2000e–2000e-17. (Doc. 1). On April 7, 2017, URS filed a motion to dismiss Clowney's complaint for failure to state a claim. International failed to file any responsive pleading or motion. (Doc. 4).

In light of URS's motion to dismiss, Clowney filed an amended complaint on April 28, 2017. (Doc. 8).[2] URS again filed a motion to dismiss the amended complaint on May 12, 2017, and International again did not file any responsive pleading or motion to the amended complaint. (Doc. 10).

---

[2] Under Local Rule 7.6, "[a]ny party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . . ." M.D.Pa. Local Rule 7.6. Because URS filed its motion to dismiss (Doc. 4) and brief in support (Doc. 7) on April 7, 2017, Clowney's brief in opposition or an amended complaint was due by April 21, 2017. Although Clowney's first amended complaint was untimely, the court finds no prejudice against URS in accepting Clowney's first amended complaint as timely filed. Moreover, Clowney's first amended complaint is of no moment herein because Clowney eventually filed a second amended complaint.

Clowney thereafter filed a second amended complaint on June 1, 2017,[3] which reasserted her Title VII claims against URS and International, but additionally alleged a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§621–634. (Doc. 12). Yet again, URS filed a motion to dismiss on June 7, 2017, while International tendered no responsive filing. (Doc. 15).

On September 5, 2017, the Clerk of Court entered default judgment against International under Federal Rule of Civil Procedure 55(a). (Doc. 24; Doc. 25). On September 21, 2017, International filed a motion to vacate the entry of default and a motion to dismiss counts III, IV, and V of Clowney's second amended complaint. (Doc. 28).

On September 28, 2017, Clowney initiated a separate action, asserting a "hybrid" claim under §301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §185, stemming from the terms of a written collective

---

[3] Again, Clowney violated M.D.Pa. Local Rule 7.6 by failing to file her second amended complaint within fourteen days of service of URS's motion and brief. However, considering that URS filed a motion to dismiss six days later and did not raise any objection, the court finds that URS will not be prejudiced by allowing Clowney's second amended complaint to be considered timely-filed.

bargaining agreement.[4] (No. 3:17-cv-1761, Doc. 1). This time, Clowney named as defendants URS, International, and two regional offices of International: District and Local. (*Id.*). On November 16, 2017, URS moved to dismiss the complaint. (No. 3:17-cv-1761, Doc. 11). On January 3, 2018, the two cases described above were consolidated for all purposes. (Doc. 35).

After consolidating Clowney's cases, this court denied URS's two motions to dismiss (Doc. 15; No. 3:17-cv-1761, Doc. 11), as well as International's motion to dismiss (Doc. 28) as to count V of the second amended complaint, the ADEA claim, but granted International's motion as to counts III and IV of the second amended complaint (Doc. 12), the Title VII claims.[5] (Doc. 37).

International filed its answer to the second amended complaint for the discrimination claims and its answer to the §301 complaint on February 1

---

[4] A hybrid §301 claim is one in which "an employee files a claim against the union alleging breach of the duty of fair representation together with a claim against the employer alleging breach of the collective bargaining agreement in a 'hybrid' section 301/duty of fair representation suit." *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993).

[5] Counts III and IV sought compensatory and punitive damages, respectively, from International for discriminatory acts in violation of Title VII.

and 12, 2018, respectively. (Doc. 38; Doc. 40).[6] On February 26, 2018, URS filed its answer to Clowney's second amended complaint, as well as Clowney's §301 complaint. (Doc. 42; Doc. 43).

On August 13, 2018, URS, District and Local, jointly, and International filed three motions for summary judgment (Doc. 50; Doc. 51; Doc. 52) and statements of material facts (Doc. 50-1; Doc. 51-1; Doc. 52-1).[7] On August 23, 2018, URS filed a brief in support of its motion (Doc. 53), as did District and Local, jointly, (Doc. 54) and International (Doc. 55). Clowney filed briefs in opposition and responsive statements of material fact to URS (Doc. 56; Doc. 57), District and Local (Doc. 60; Doc. 61), and International (Doc. 62; Doc. 63). In her briefs in opposition, Clowney indicated that she was withdrawing all of her Title VII and ADEA claims, and she did not oppose the entry of summary judgment on those claims. Accordingly, the court will enter summary judgment in favor of URS and International on the three remaining

---

[6] International filed two answers to Clowney's §301 complaint. (Doc. 39; Doc. 40). The court will treat the most recent filing as an amended answer and will only consider the amended answer herein.

[7] Defendants improperly filed their statements of fact as attachments to their motions. (Doc. 50-1; Doc. 51-1; Doc. 52-1). Under Local Rule 56.1, "[a] motion for summary judgment . . . shall be accompanied by a **separate**, short and concise statement of the material facts . . . ." M.D.Pa. Local Rule 56.1 (emphasis added). The court will nevertheless consider their statements of fact as if they had been properly filed.

counts, count I, II, and V, of the second amended complaint. (Doc. 12). Defendants' motions for summary judgment on the hybrid §301 claims in the remaining complaint (No. 3:17-cv-1761, Doc. 1) are now ripe for disposition.

## II.    LEGAL STANDARD

"Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant, and material if it could affect the outcome of the case." *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 167 (2018). In considering a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

To succeed on a hybrid §301 claim under the LMRA against either the company or the union, a plaintiff must demonstrate *both* (1) that the union violated its duty of fair representation, and (2) the employer breached the

collective bargaining agreement. *Felice,* 985 F.2d at 1226 (emphasis added); *see also DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 165 (1983). The two claims are "inextricably interdependent." *United States Parcel Service v. Mitchell*, 451 U.S. 56, 66-67 (1981) (Stewart, J. concurring). Thus, in a hybrid §301 claim, "the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, *and vice versa.*" *Felice*, 985 F.2d at 1226. (emphasis added).

The union has a statutory duty to serve as the employees' exclusive bargaining representative and, therefore, must fairly represent all employees covered by the collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). A union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith, and this rule applies to all union activity. *Air Line Pilots v. O'Neill*, 499 U.S. 65, 67 (1991). A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of its actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. *Id.* In evaluating a union's actions, courts "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Id.* at 78. The duty of fair representation is thus akin to the duty owed by other

fiduciaries to their beneficiaries." *Id.* at 74 (giving examples of trustee-to-trust beneficiaries, attorney-to-client, and corporate officers-to-shareholders relationships). "Just as these fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Id.* at 75.

The Third Circuit has set forth the analysis for §301 claims relating to grievances:

> With respect to an alleged grievance against an employer, a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion. A union's conduct can be classified as arbitrary only when it is irrational, when it is without a rational basis or explanation. The plaintiff must demonstrate more than mere ineptitude or negligence on the part of the union, and the fact that trained counsel would have avoided the error or pursued a different strategy is not enough. And it bears noting that a union's foremost duty to advocate on behalf of its members is tempered by an obligation . . . to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action.

*Gehringer v. Atlantic Detroit Diesel Allison LLC*, 595 F. App'x 157, 161 (3d Cir. 2014) (internal citations and quotation marks omitted).

### III. MATERIAL FACTS[8]

#### a. Clowney's Grievance

The United States Army contracts with companies to provide services at the Tobyhanna Army Depot ("Tobyhanna"). The contractors during the relevant time period were Lockheed Martin, followed by Defense Support Services ("DS2"), followed by URS.

Clowney began employment as an equipment cleaner for Lockheed Martin on June 21, 2004, and was promoted to Electronic Tech II (ET II) by DS2 in September of 2004. In January of 2007, Clowney was promoted to Electronic Tech III (ET III) by DS2 and continued in that position when she was hired by URS on July 1, 2011. During her employment at Tobyhanna, Clowney was a member of International, District, and Local.

Local is a labor organization that is affiliated with, and falls under the jurisdiction of, District. District is a labor organization responsible for providing services needed to bargain and enforce the collective bargaining agreements (CBA) of bargaining unit employees who fall within the jurisdiction of District, including those working at Tobyhanna. District lodges,

---

[8] The material facts are derived from defendants' statements of fact, Clowney's response, and the exhibits filed by both parties. The court only includes facts material to the issues in the case, and it does not include legal conclusions.

including District, are comprised of several local lodges. District lodges employ business representatives who are assigned to handle the negotiating, administering, and handling of grievances or complaints arising from the CBAs for each of the local lodges. District lodges are primarily responsible for providing the services needed to bargain and enforce the members' CBAs and they do so by employing business representatives.

International, as the governing body for all district and local lodges, assigns the various district lodges into territories. District was assigned to the eastern territory. International, District, and Local have separate headquarters and governing documents, and each has its own separate elected representatives. Each entity files an annual financial report with the Department of Labor, maintains a distinct employer tax number, and makes the necessary employee payroll deductions and remittances to the Internal Revenue Service.

Although International does not employ the district lodges' business representatives, it does contribute a portion of its revenue to district lodges to help support the business representatives. Employees represented by International hold a membership with, and pay dues to, a local lodge, which then remits a portion of the dues to its district lodge and to International.

District and URS are parties to a CBA,[9] which governs the terms and conditions of employment for those URS employees represented by Local, including Clowney. The CBA defines seniority as "including the whole span of continuous service with the present contractor, or successor, and with predecessor contractors, in the performance of similar work at the same Federal facility." (Doc. 52-11, at 15). In the event Tobyhanna instructs URS to effect a reduction in force (RIF), the CBA indicates that URS will determine the final number of employees to be laid off but states that it is necessary for URS and District to work together on a layoff plan. Once voluntary layoffs are verified, those employees designated for layoff are identified by URS and confirmed by District.

_____

[9] International and Clowney dispute whether International is a party to the CBA. The title of the CBA in effect from July 1, 2011, to June 30, 2014, states that it is an "Agreement Between URS Federal Services, Inc. Tobyhanna Army Depot, Pennsylvania The International Association of Machinists and Aerospace Workers And Its Industrial District Lodge 1 For Employees Working at Tobyhanna Army Depot, Pennsylvania." (Doc. 52-11, at 2). The preamble of the CBA, however, states, "This Agreement is effective July 1, 2011, *by and between URS Federal Services, Inc.*, hereinafter referred to as 'URS' or the 'Company', *and District Lodge No. 1 of the International Association of Machinists and Aerospace Workers*, AFL-CIO, hereinafter referred to as the 'Union.'" (Doc. 52-11, at 4) (emphasis added).

As discussed below, whether International is a party to the CBA is immaterial because even if International had been a party to the CBA, Clowney has failed to show that International instigated, supported, ratified, or encouraged any illegal conduct by District or Local.

All employees affected by a layoff are given the opportunity, by seniority, to take a voluntary layoff. (Doc. 52-11, at 16). An employee who had been laid off may have rights to bump an individual in a lower classification, provided the employee has previously held the job classification at Tobyhanna and has successfully completed the pre-determined certification testing required by Tobyhanna. (Doc. 52-11, at 16).

The CBA also affords employees recall rights, by which a laid off employee may be recalled

> (1) To the same job classification held at the time of layoff.
> (2) To a lower paid job classification in an open job assignment for which the laid off employee is deemed to be qualified to perform. Qualified to perform is identified as having prior [Tobyhanna] experience in the job classification and the successful completion of the skill evaluation test as required in our contract with the customer. It is the employee's responsibility to notify the Company of their [sic] intent to be recalled into another skill classification.

(Doc. 52-11, at 17-18) (emphasis in original). Employees permanently laid off retain their recall rights for twenty-four months from the date of layoff. However, any employee who does not return to active employment within the twenty-four-month period will lose his seniority status.

As to grievances, the CBA sets forth a multi-step process which encourages the resolution of grievances. Initially, grievances are to be discussed in an informal meeting with the employee, the employee's

supervisor, and Local's steward. If still unresolved, the grievance moves to step one, wherein the grievance is put in writing, signed by the employee and Local's steward, and presented to the local human resources representative and/or site manager. The local human resources representative, site manager, and the employee's immediate supervisor then meet with the employee and Local's steward to resolve the matter and render a written decision. If still unresolved, the grievance proceeds to step two, where a formal meeting occurs between District and URS. If the grievance is not resolved in either step one or step two, Local or District may advance the grievance to arbitration in their discretion. The grievance process is handled exclusively by Local and District, but International may provide advice or answer a member's questions regarding his grievance.

On January 27, 2012, Clowney filled out a form at URS's request, which identified all the positions she held while working at Tobyhanna: equipment cleaner, ET II, and ET III. (Doc. 52-15). On March 13, 2013, Dan Hopkins, URS's Site Manager, distributed a memorandum notifying all employees of a RIF and provided information about voluntary layoffs, bumping rights, and their options under the CBA. The memorandum also encouraged employees to visit URS's website and apply online to other available positions. On April 19, 2013, the RIF occurred.

Clowney was given the option for a voluntary layoff or to bump a more junior coworker for a position within her job classification and skill level, if qualified. Clowney elected to use her bump rights from an ET III into an ET II position. However, the only available ET II positions were in the cable assembly shop. In order for Clowney to bump into the ET II position, she was required to take a certification test for the cable shop. Clowney took the test but failed and was laid off on April 19, 2013.

Eighty-seven other employees were also laid off, including thirteen who were employed as ET IIIs. Clowney did not inquire about bumping into any other positions, including an equipment cleaner position, because she assumed that she would have been alerted about the possibility of bumping into another position for which she was qualified. While Clowney was laid off, she did not check URS's website for open job postings.

In May of 2014, URS recalled eight ET IIIs. Clowney was ninth on the seniority list and therefore was not recalled. In June 2014, Clowney's sister, Lisa Clowney, was recalled to an equipment cleaner position. In December 2014 or January 2015, Clowney called Joseph Gerrity, the President of Local and an employee of URS, to inquire about the recall of equipment cleaners but was told that there were no open positions because less senior individuals had been recalled prior to her inquiry. On April 19, 2015,

Clowney's twenty-four-month recall period expired, and she could no longer be recalled to URS under her former seniority status.

On January 5, 2016, Clowney was rehired by URS as a painter helper, but discovered she did not have any seniority accumulated. Clowney contacted Gerrity to inquire about why she had been "skipped" when URS was recalling employees to work.[10] When Gerrity searched Clowney's personnel file, he found the January 27, 2012 form she completed which stated that she had been employed by Lockheed Martin as an equipment cleaner, but he did not find any other documentation demonstrating this. On April 15, 2016, Gerrity left Clowney a voicemail stating, "Sandra, I was able to obtain that paperwork[11] from the office. It does state that you were an Equipment Cleaner and if you would like to be called back to that classification you have to do a little bit of homework . . . ." (Doc. 52-19). On May 2, 2016, Gerrity left Clowney another voicemail stating, "Sandra, you are welcome to come over and see me or we could meet someplace today to file a grievance. . . . But to file a grievance I'm gonna need some proof to win the grievance. . . ." (Doc. 52-19).

---

[10] In April of 2016, Clowney was promoted from painter helper to ET II.
[11] Gerrity was referring to the January 27, 2012 form.

Clowney contacted the Pennsylvania Department of Revenue and Lockheed Martin to obtain employment documents during her employment as an equipment cleaner but evidently was unsuccessful.[12] Nevertheless, on May 4, 2016, Local filed a grievance on Clowney's behalf, asserting that URS failed to call her back by seniority to the equipment cleaner classification. On May 10, 2016, URS answered the grievance, stating that it was untimely and unfounded.

Clowney contacted District and spoke with William McIntosh, District's Business Representative. McIntosh explained the grievance/arbitration process to Clowney and told her that she should obtain as much documentation as possible to succeed in her grievance. Clowney also contacted International and spoke with Brian Bryant, then-Chief of Staff of International's Eastern Territory, to discuss her grievance, and reported that Bryant "was very kind." (Doc. 52-3, at 41). Bryant referred the matter back to McIntosh.

On a separate occasion, Clowney contacted James Smith, the subsequent Chief of Staff of International's Eastern Territory, to discuss the

---

[12] Clowney admits that her response to requests for production of documents did not include any documents from the Department of Revenue or Lockheed Martin. (Doc. 51-1, at 12).

way in which her grievance was being handled. Smith became involved only to facilitate communication between McIntosh and Clowney and he had no other input regarding her grievance. Clowney found Smith to be a "a very nice person," and stated that her interactions with him were "always . . . pleasant." (Doc. 52-3, at 46).

On June 6, 2016, Clowney submitted an internal complaint form to URS in which she complained that "standard company on[-]site documents that each and every employee must sign (mandatory) prior to downsizing, layoffs, movements etc." were not provided to her. (Doc. 50-8, at 50). On July 20, 2016, Clowney met with Gerrity, McIntosh, and Kevin Meredick, Local's Chief Steward, and they informed her that they had attended the step two meeting of the CBA grievance procedure with Hopkins, URS's Site Manager.

On February 9, 2017, Gerrity sent Clowney a letter stating, in pertinent part,

> [Local]'s investigation of this grievance has revealed no evidence to support your claim that you advised [URS] of your desire to exercise your right to bump into an Equipment Cleaner position. Therefore, [Local] has had numerous discussions with you requesting any evidence you could provide to demonstrate that you told [URS] that you wanted to exercise your right to bump into an Equipment Cleaner classification. While you have committed to

> provide that information verbally, to date, [Local] had not received any documentation from you. Unfortunately, without that documentation, [Local] is not able to progress your grievance to arbitration.
>
> Accordingly, [Local] is writing to request this information, one last time. Please provide any information you have which will support your grievance by no later than February 24, 2017. If [Local] does not receive [this] information . . . by February 24, 2017, it will be forced to withdraw your grievance.

(Doc. 50-9, at 33).

On February 27, 2017, Gerrity hand-delivered Clowney an identical letter, which requested the documentation by March 13, 2017. (Doc. 50-9, at 35). On March 29, 2017, Gerrity hand-delivered Clowney a final letter, which stated, in pertinent part,

> On March 8, 2017, I received a response from you. Your response confirms that we have no evidence that you notified [URS] that you wished to be recalled to the Equipment Cleaner position. Unfortunately, taking the test for the Electronic Technician II position or having previously held the Equipment Cleaner position does not meet the requirement to notify [URS] that you wanted to be considered for recall to the lower Equipment Cleaner position.
>
> Accordingly, based on a review of the facts of the case, the [CBA,] and the issues regarding the timeliness of the grievance, [Local] does not believe your case merits further appeal. Your case is now closed.

(Doc. 50-9, at 37). On March 29, 2017, Local notified URS that it was withdrawing Clowney's grievance without prejudice. (Doc. 50-9, at 39).

### b. 2012 Grievance, Arbitration, and Settlement

After her rehire, Clowney learned about a settlement related to the 2012 RIF between URS and its ET II employees which proceeded to arbitration and ultimately resulted in a monetary settlement. The matter started when a group of ET II employees filed a grievance on September 25, 2012, prior to Clowney being laid off, which asserted that URS violated the CBA by laying off ET IIs out of seniority order during the RIF. Local decided which employees for whom it would file the grievance, and Clowney was not included. In October 2013, the arbitrator sustained the grievance and awarded the employees full backpay and benefits, less any interim wages and unemployment compensation benefits received. URS filed a complaint in this court, seeking to vacate the arbitration award, but the parties settled while the matter was pending.[13]

---

[13] Under the terms of the settlement, URS agreed to pay the grievants $1,540,000.00, less taxes; provide training at Johnson College for cable shop positions; and reinstate employees who passed the cable shop test. Those who failed the test would not be reinstated but would have certain recall rights.

Clowney testified that when she spoke with Gerrity in December 2014 or January 2015 to ask why she had not been yet recalled to work, she also asked him why she had not been included in the grievance and arbitration. Clowney indicated that although Gerrity said he would "look into it," she did not pursue the matter any further because her "main concern at that time was getting [her] foot back in the door" at URS. (Doc. 51-2, at 58).

## IV.    DISCUSSION

In the instant matter, because the court's disposition on the breach of duty of fair representation claim is dispositive of the entire §301 hybrid claim, the court will address it first.

### a. Breach of Duty of Fair Representation

#### 1.  *District and Local*

Clowney asserts that District and Local breached their duty of fair representation for what are essentially three different reasons. First, Clowney argues that District and Local breached their duty by choosing not to include her the 2012 grievance that resulted in the monetary settlement. Second, Clowney asserts that District and Local breached their duty by failing to represent her interests after her layoff when positions she was

qualified for became available but were filled by employees with less seniority. Finally, Clowney argues that District and Local acted breached its duty by failing to properly investigate, litigate, and appeal her grievance.

As to District and Local's choice not to include Clowney in the 2012 grievance, Clowney has not identified a genuine dispute as to a material fact that would prevent the court from entering summary judgment against her on this point. First, the 2012 grievance was filed on behalf of ET II employees who were laid off out of seniority order because they failed the cable test and were improperly replaced with junior ET IIs. As the arbitrator made clear in the award, the grievance was not related to bumping rights but instead involved employees who, as ET IIs, were of the same classification as the ET IIs in the cable shop yet, despite having higher seniority, were treated as if they were attempting to bump into the ET II cable shop positions, when they were in fact attempting to be reassigned within the ET II position classification. In other words, the more senior ET IIs were being treated as if they were *bumping* into ET II positions in the cable shop, which required passing the cable test under the CBA, instead of merely being *reassigned* as ET IIs to the cable shop, which would not have required passing the cable test. (Doc. 51-19).

Clowney has not provided any evidence showing that her situation was similar those involved in the 2012 grievance such that District and Local's failure to include her in the grievance was unreasonable or irrational. Clowney was not an ET II employee being forced to take and pass a cable test before bumping into another ET II position, nor was she, as an ET III, forced to pass a cable test before bumping into another ET III position. Unlike the employees involved in the 2012 grievance, Clowney was indeed attempting to bump into the ET II position from a ET III position, which, pursuant to the CBA, required attaining the proper certification, i.e., passing the cable test.

Moreover, the grievance was filed on September 25, 2012, which was prior to Clowney's layoff on April 19, 2013. Clowney was therefore not aggrieved when District and Local filed the 2012 grievance and it was entirely reasonable that they chose not to include Clowney, who was still employed, in a grievance involving employees who had been laid off out of seniority order. Thus, for these reasons, District and Local did not act unreasonably in excluding Clowney from the grievance.[14]

---

[14] Although Clowney has submitted seven affidavits of co-workers who were included in the grievance, this does not establish that she was singled out, since each affiant was an ET II at the time of the layoff and thus Clowney,

As to Clowney's claim that District and Local failed to represent her interests while she was laid-off because positions she was qualified for were being filled with less senior employees, Clowney acknowledged that she did not seek to have a grievance filed at that point because her seniority rights had not yet expired and she was waiting on URS to call her back to work. (Doc. 51-2, at 35). Thus, District and Local's failure to file a grievance for Clowney where she did not ask that one be filed was in no way unreasonable or arbitrary. *See Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594-95 (3d Cir. 2005) (observing that when it is undisputed that an employee has not attempted to first resolve a dispute via the grievance process, he cannot sue his employer for any alleged breach of the collective bargaining agreement, nor his union for any alleged breach of the duty of fair representation), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc). Although the Supreme Court has established three exceptions to the requirement that employees first exhaust their grievance rights, Clowney has not alleged that any of them apply here.

---

as an ET III attempting to bump into an ET II position, was not similarly situated to them. (Doc. 80-1; Doc. 80-3; Doc. 80-4; Doc 80-5; Doc. 80-6; Doc. 80-7; Doc. 80-8).

Finally, Clowney's argument that District and Local breached their duty of fair representation by refusing to proceed further with her grievance without additional documentation showing that she had previously worked as an equipment cleaner likewise fails. Clowney contends that she should not have been required to provide additional documentation aside from the January 27, 2012 form she submitted during the layoff to show that she was entitled to be recalled as an equipment cleaner. However, the obvious result of Clowney's grievance, if successful, would have been the displacement of another less-senior employee and fellow union member. Given this, District and Local's request for some type of additional documentation, such as a W-2 form or paystub, showing that Clowney was entitled to the position she would be placed in was well within the wide range of reasonableness afforded to unions, particularly where District and Local also owed an equal duty of fair representation to the employee being displaced.

Although Clowney notes that a union cannot arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, based on the undisputed facts, District and Local did not do so here. To the contrary, District and Local gave every indication that they would proceed further with her grievance if they received the requested documentation. Additionally, Clowney was afforded plenty of notice and time to obtain the documentation,

given that District and Local requested it at least five times over the course of several months.

Furthermore, District and Local complied with the grievance procedures by holding step one and step two meetings, working with URS on Clowney's grievance, and keeping Clowney reasonably informed. To the extent that Clowney believes that District and Local breached their duty by failing to advance the grievance more rapidly, she has averred no facts to show that the timing in which her grievance was processed was different than with other grievances. Even if Clowney could show that District and Local were negligent in the slow processing of her grievance, mere negligence is insufficient to show a breach of the duty of fair representation. *See Gehringer*, 595 F. App'x at 161 ("The plaintiff must demonstrate more than mere ineptitude or negligence on the part of the union, and the fact that trained counsel would have avoided the error or pursued a different strategy is not enough." (internal quotation marks omitted)).

Accordingly, because the undisputed facts of record indicate that District and Local's actions were not arbitrary, irrational, or outside a wide

range of reasonableness, the court will enter summary judgment in favor of District and Local on count I of Clowney's complaint.[15]

### 2. *International*

Clowney has likewise alleged that International breached its duty of fair representation for the same reasons as with District and Local. However, Clowney has failed to allege that International took any action independent of District and Local that was contrary to its fiduciary duty. Instead, Clowney makes all pertinent allegations in her complaint against International, District, and Local, collectively.

Furthermore, Clowney admits that her only interaction with International was the phone calls with Bryant, whom she found "very kind," and Smith, whom she described as a "very nice person." (Doc. 52-3, at 41, 46). Clowney has not alleged that these or any other actions by International specifically constituted a breach of the duty of fair representation.

Clowney has also failed to articulate a basis for vicarious liability attributable to International. The Supreme Court and the Third Circuit have reiterated that international union organizations may be held liable for the

---

[15] Although International and District and Local argue that Clowney's hybrid §301 claims are time-barred, the court need not reach this argument given the court's disposition on the merits of the §301 complaint.

activities of their regional counterparts when they "instigate, support, ratify, or encourage" any of the regional union's unlawful activities. *Brenner v. Local 514, United Broth. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1288 (3d Cir. 1991) (quoting *Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212, 218 (1979)). "To be held liable for the actions of individuals, a union must be shown to have 'instigated, supported, ratified or encouraged' *the particular activities in question.*" *Feather v. United Mine Workers of Am.*, 711 F.2d 530, 539 (3d Cir.1983) (emphasis added). *Scott v. Graphic Communs. Int'l Union, Local 97-B*, 92 F. App'x 896, 904 (3d Cir. 2004). "When determining the vicarious liability of an international union for the [] action[s] of its local union affiliates and their officers, common law agency principles apply." *Id.* at 904.

Here, Clowney has not put forth any evidence of a common law agency relationship between International and Local and District. Significantly, Clowney has not alleged, let alone produced any evidence, that International either participated in, or instigated, supported, or ratified, District and Local's alleged breach of their fiduciary duty.

Although Clowney states in her response to International's statement of material facts that International was a party to the CBA, that Local, District, and International are affiliated and work in unison, and that International

"promotes the assistance that it provides to its members and locals on its web site [sic]," this is insufficient to survive summary judgment, since Clowney has not alleged, nor proven with citations to the evidentiary record, that International exercised sufficient control and supervision over District and Local such that it "'instigated, supported, ratified, or encouraged' the *particular activities in question*"—namely, Local and District's alleged breach of their duty of fair representation. *Feather*, 711 F.2d at 539. To the contrary, in her brief in opposition to International's motion for summary judgment, Clowney merely reiterates the arguments of her brief in opposition to District and Local's motion for summary judgment but does not elaborate with any specificity on why those arguments apply to International.

Therefore, because Clowney has failed to show that International directly breached its duty of fair representation or that it should be held vicariously liable for District and Local's alleged breach of the same, the entry of summary judgment in favor of International on count I is appropriate.

### b. Breach of Collective Bargaining Agreement by URS

Within a hybrid §301 claim, the two claims are "inextricably interdependent." *Mitchell*, 451 U.S. at 66-67. A plaintiff "must prove that the employer breached the collective bargaining agreement in order to prevail

on the breach of duty of fair representation claim against the union *and vice versa.*" *Felice*, 985 F.2d at 1226 (emphasis added); *see also Keister v. PPL Corporation*, 253 F.Supp.3d 760, 770 (M.D.Pa. Oct. 6, 2015). Therefore, since the court has entered summary judgment for International, District, and Local on the breach of duty of fair representation count, Clowney cannot succeed, as a matter of law, on her claim against URS for breach of the CBA. Accordingly, the court will enter summary judgment in favor of URS on count II Clowney's complaint.

## V. CONCLUSION

Based upon the undisputed facts of record, URS's, International's, and District and Local's motions for summary judgment will be granted. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: September 30, 2019**
17-223-02